**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MARILYN S.,

                **Plaintiff,**

      **v.**                             **Civil Action 2:21-cv-3598**
                                     **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

                **Defendant.**

## OPINION AND ORDER

Plaintiff, Marilyn S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 6, 7). For the reasons set forth below, the Commissioner's non-disability determination is **AFFIRMED** and this case is **DISMISSED**.

## I.     BACKGROUND

Plaintiff protectively filed her application for DIB on December 27, 2018, alleging that she was disabled beginning December 3, 2018, due to type 2 diabetes mellitus; neuropathy in her hands, feet, and legs caused by diabetes mellitus; heart problems; and hypertension. (Tr. 178–83, 196). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on April 6, 2020. (Tr. 34–73). The ALJ denied benefits in a written decision on May 7, 2020. (Tr. 12–33). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 15, 2021 (Doc. 1), and the Commissioner filed the administrative record on August 26, 2021 (Doc. 10). The matter has been briefed and is ripe for consideration. (Docs. 15, 16, 17).

### A.     Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

[Plaintiff] testified that she lives in a house with her husband who works. She denied any income since the alleged onset date. She said she has a driver's license and four years of college without any history of special education. [Plaintiff] alleged seeing a doctor for her knees. She said that her worst area is her shoulders, back and arms worsening over the past five years. She said she takes 800 mg. of ibuprofen and Tylenol and had injections between her shoulder blades, which are not reflected in the record. She said her medication dulls the pain, but the injections do not help. She was asked why she continues them if they are not helpful and said her treating doctor told her this treatment could take time before providing relief. She denied any injection treatments in her back. She denied surgeries on the affected areas. She said she treated with physical therapy at the Wellness Center, and uses braces on her knees and foot sometimes, that she picked up at a store. She denied any prescribed cane, saying she bought one after her doctor recommended it. She uses it when out in the yard. She said she has difficulty gripping things, but can open a can. She denied any mental health treatment.

[Plaintiff] testified that her back pain radiates into her hips and it is difficult for her to stand after sitting. She alleged that her shoulder pain radiates to her neck. She said that her left shoulder is worse than the right. She alleges difficulty with grip and needs help opening bottles and getting in and out of the tub. [Plaintiff] testified to difficulty reaching above waist level but said if she really pushes herself, she can reach once or twice. [Plaintiff] testified that she can sit only 25 minutes due to bursitis, walk 40-50 feet at a slow rate, and lift 10-15 pounds from the floor or table. She testified that she cannot lift the laundry, but can transfer clothes from the washer to the drier. She can make simple meals such as potatoes, spaghetti, pizza, biscuits and gravy, and fried eggs. She can use the broom, but her husband runs the vacuum. She can push the cart at the grocery store and she can reach only waist level items. For the last couple of years[,] she always rides with her husband. She colors and does word finds. She uses her phone to go on Facebook.

(Tr. 19–20).

### B.     Relevant Medical Evidence

The ALJ summarized the relevant medical records as follows:

[Plaintiff] established with Dr. Damron for tachycardia on 5/31/17. She was advised to undergo a stress test and echocardiogram and wear a 30-day event monitor. She returned much later on a referral by Dr. Simon on 11/19/18 for heart palpitations, chest pain and shortness of breath for the last few weeks. Dr. Damron again ordered an echocardiogram and stress test. Exam findings were unremarkable. [Plaintiff] was reporting 0/10 pain on 11/12/18 just prior to her alleged onset date. She had

run into issues with her prescription for Metoprolol for palpitations. She denied any palpitations but complained of fatigue. Objective exam findings were normal with some medication dosages changed. Cardiac testing had been negative (a normal LVEF of 70% and otherwise mild findings, no evidence of ischemia or prior myocardial infarction (4F/94-99). She was prescribed a glucometer and test strips for her diabetes mellitus. She needed a work excuse (4F).

[Plaintiff]'s 2/19 follow-up indicated normal exam findings, a normal stress test, and echocardiogram revealing a normal LVEF of 70%, with no events on loop recorder, and heart palpitations only occasionally and mostly controlled with metoprolol. Her chest pain was resolved. Her hyperlipidemia was not yet at goal of under 100, with reading of 111. She had 0/10 pain. She was advised to return in 3-4 months (1F, 2F). On 5/17/19, [Plaintiff] followed up with Dr. Gladis, reporting 0/10 pain. She denied trouble walking, dizziness, forgetfulness, weakness, and said she was doing well without any chest pain or shortness of breath. She said she had only occasional heart palpitations overall controlled with Lopressor. Her chest pain was resolved. She denied any pain, angina and other heart related symptoms. She denied symptomology from other systems. She was comfortable with normal cardiovascular findings, respiratory findings, extremity findings, musculoskeletal findings and psychiatric findings. She was found to have stable angina pectoris, heart palpitations and hyperlipidemia (111). Her testing was reviewed and was normal with [Plaintiff] advised to continue treatment and return in 4 months (11F/134-141).

[Plaintiff] again reported fatigue on 2/14/19, citing loss of her job, but also complained of stiff knees, cold weather stiffening her hip and a fall, but reported no pain. Her body mass index was 42.8 kg/m2. She was admittedly noncompliant with her ordered diabetes mellitus diet. She was comfortable and in no acute distress. Exam findings were again normal. Despite full strength, normal muscle tone and strength, and normal gait, and no imaging of her knee, she was assessed with degenerative joint disease of the knee. Imaging was ordered of her left hip and both knees, and she was advised to have physical therapy for these areas (4F). Imaging from 3/8/19 revealed a normal left hip, thus degenerative joint disease of the left hip is not supported (5F/8). [Plaintiff] had only minimal degenerative changes in her lumbar spine with no narrowing and unremarkable facet joints. Her knees showed minimal degenerative changes (10F/8). Thus, the imaging is not that remarkable and consistent with the many normal exam findings, and inconsistent with the extent of [Plaintiff]'s disability reports.

[Plaintiff] was noted to have diabetes mellitus without complications, but she needed better control with A1C of 7.6 as of 4/22/19 (4F/71). However, [Plaintiff] actually had a worse A1C number of 8.0% as of 7/16/19 (10F/3) and worse at 10% as of 1/27/20 (10F/289). [Plaintiff] admitted to continued noncompliance with her diabetic diet and was not working on weight loss as recommended.

[Plaintiff] complained of left foot pain for three weeks with imaging on 12/30/19

revealing only mild diffuse degenerative changes. Recent complaints such as these involving her left foot fail to meet the durational requirements (10F/190). She was referred to a podiatrist for a calcaneal spur of the left foot on 3/16/20 revealed on imaging (8F/453). She was again referred to physical therapy for bilateral hip pain thought to be bilateral hip bursitis (10F/245). She was referred to orthopedics for her knee pain complaints on 5/20/19, 6/11/19, and thereafter, but had yet to follow through as of the hearing, which suggests more tolerable symptomology than alleged (11F/222, 268).

On 7/12/19, she complained of 8/10 bilateral hip pain, but denied falls, trouble walking, weakness and numbness. She said this hip pain is mostly noticeable when she lays on her back, (which would not affect most work activity). She did allege right foot numbness but with no findings supportive of any abnormalities. She reported taking Tylenol arthritis 650 mg. for joint pain without relief. Otherwise, she indicated doing well with no chest pain, shortness of breath or other issues. She was comfortable in no acute distress with normal detailed findings including respiratory, cardiovascular, gastrointestinal, musculoskeletal (normal gait, normal extremities, normal muscle strength and tone, normal range of motion) and normal neurological and skin findings. X-rays of both hips and the lumbar spine were ordered, along with physical therapy, weight loss (again) and a uric acid level. Her blood pressure was normal at 122/80 with normal testing. Her A1C was 7.6%. [Plaintiff] was advised to lose weight, continue medications and follow a diabetic diet. She was advised to follow a low-fat diet plan and lose weight for her hyperlipidemia which was not at goal. While she had iron deficiency anemia[,] she was asymptomatic (11F/121-122). [Plaintiff] reported 0/10 pain on 7/23/19 (11F/101).

[Plaintiff] returned to Dr. Simon on 8/9/19, reporting that her (long overdue) physical therapy was helping with her hip stiffness. She reported that she had been diagnosed with hip bursitis. Pain was a 6/10 that day. She reported improvement and denied chest pain, palpitations, shortness of breath, joint pain, joint swelling and limited range of motion, focal weakness, bruising or bleeding tendencies. She was ambulatory and not in any acute distress and comfortable. Objective findings were normal including detailed findings as to her heart, neck, and musculoskeletal systems. The doctor changed his previous possible diagnosis of hip degenerative joint disease to hip bursitis (bilateral), noting no objective abnormalities. He also included hypertension and type II diabetes mellitus without complication (11F/87-96).

***

On 10/28/19, [Plaintiff] saw Dr. Damron and complained of unusual heart racing without chest pain or shortness of breath. Her body mass index was still high at 43.7 kg/m2, her pulse oximetry was 98% on room air and her blood pressure was elevated at 162/100. She again reported pain at a 0/10. There was a sleep apnea questionnaire indicating that she felt tired during the daytime. As for her fall risk, once again she denied trouble walking, dizziness, forgetfulness, weakness and

numbness, with "walking" listed as her physical exercise. Other than her palpitations, she denied other symptoms from all other systems. Detailed exam findings were all normal. [Plaintiff] was prescribed a new medication for her hypertension. As for her electrocardiogram, she was found to have supraventricular tachycardia and unstable angina pectoris, with the possibility of a pacemaker in the near future due to bradycardia. Her chest pain was still resolved with her last stress test normal and her last echocardiogram revealing a LVEF of 70% (11F/76-82). [Plaintiff] has yet to require a pacemaker.

[Plaintiff] followed up on her diabetes mellitus, hypertension, hyperlipidemia and Vitamin D deficiency on 11/4/19, reporting a 0/10 on her pain scale. She was complaining of a sharp pain on the left side of her head when she abruptly turned it. She was treating with Cefdinir for a urinary tract infection. She reported dizziness, trouble walking and a fall without explanation.

[Plaintiff]'s A1C as up from 9.2% to 10%, with [Plaintiff] saying she tries to avoid carbohydrates. She was not at goal for her hyperlipidemia or her vitamin D deficiency. She was also treated for anemia with an iron supplement. She was ambulatory and in no acute distress with all normal physical findings. As for her musculoskeletal system, she had intact range of motion, strength and tone. She was noted to be asymptomatic with regard to her supraventricular tachycardia/history of bradycardia. She was advised that she needs to be more compliant with her diabetic diet, check sugars at home and do a log, retest A1C in three months, and lose weight and exercise. She was to limit her salt intake and eat a low-fat diet for her hypertension and hyperlipidemia. She was to continue her supplements for anemia and Vitamin D deficiency (11F/53-62).

[Plaintiff] was following up on her diabetes mellitus on 12/13/19 and complained of pain in her left foot at 3/10, with no foot issue or pain at her last visit. "Otherwise[,] she indicates she is doing well." She had improved her blood pressure at home, and was not taking the prescribed Lopressor. She had improved her A1C from 9.2% down to 8.8%. Her blood pressure was improved to 118/70 and her hyperlipidemia was improved from 119 to 94. She was following with another doctor for her anemia and on iron supplements only. Her only musculoskeletal complaints were her left foot, with [Plaintiff] ambulatory and not in any acute distress and comfortable. Her musculoskeletal exam was objectively normal including full strength, intact range of motion, and normal tone. She had subjective tenderness on her left lateral aspect of her foot. An x-ray was ordered (11F/38-47). [Plaintiff] was subsequently referred to a podiatrist for a calcaneal spur of the left foot (11F/28).

[Plaintiff] saw Dr. Damron on 12/30/19 for evaluation for a pacemaker. She denied chest pain and shortness of breath and stated she h[a]s been doing well, without any new episodes of supraventricular tachycardia (SVT) and resolved chest pain. She denied all heart related symptomology. She had 0/10 pain. Her diagnoses were SVT, essential hypertension and stable angina pectoris. Two events were noted

from 10/20/19 with her loop recorder adjusted. She was advised to monitor her heart rate and blood pressure to get better control (11F/29-36). At her 2/10/20 follow-up, [Plaintiff] noted just 2 episodes of elevated blood pressure and some shortness of breath with chest tightness and no energy. Pain was 0/10. She reported no limitations in dressing or in her activities of daily living. She denied back pain, muscle weakness, myalgias, headaches, dizziness, vision changes, numbness, tingling, weakness, changes in walking, incoordination, memory loss and speech problems. Objective exam findings were normal. She was given a medication to take with elevated blood pressure; her angina pectoris was still stable (11F/12-19). Dr. Damron declined to complete the disability form presented by [Plaintiff], indicating that her primary care physician needed to complete this form. No consideration has been made of Dr. Damron's denial to complete the form.

On 2/17/20, [Plaintiff] had another kidney abscess requiring drainage, the second time this happened. Pain was at 0/10. She was noted to complain of bilateral hip and knee pain, shoulder pain and pain in her feet. She alleged difficulty ambulating and indicated she was unable to stand on her feet for longer than 5[-]minute without experiencing severe pain. However, the left foot x-ray had basically revealed a large posterior calcaneal spur, and her knee x-rays showed only degenerative changes. Very notably, she was "noncompliant with diabetic diet." Her physical activity was still listed as walking, and she was noted to be ambulatory without any acute distress. Detailed exam findings were largely normal other than obesity. She did have crepitus in the knees, the first time this was documented, and tenderness in the left heel, but with normal range of motion, strength and tone in all extremities. The summary simply repeated [Plaintiff]'s reports of limited ambulating and standing ability. She was strongly encouraged to lose weight and was "not making enough effort to do so due to noncompliance with diet." Her A1C had climbed to 10%, her hyperlipidemia increased to 109, and her blood pressure was 132/70, with [Plaintiff] to limit salt intake, but her anemia and vitamin D levels were improved (11F/1-10).

(Tr. 20–24).

[Plaintiff] does have a BMI of 43.2 kg/m2 (11F) fluctuating little, although she reports exercising by walking (11F/12). She has type II diabetes with a fluctuating A1C up to 10.0, but the evidence indicates she is not compliant with diet and with more effort had managed to reduce this number for a time. She also alleges bilateral hip, knee, shoulder and foot pain. However, her physical examinations have been essentially normal (11F/7). She does have a calcaneal spur on her left foot, and bursitis in her hips (11F/87), but there is no medical support indicating significant problems with standing and walking, with an intact gait on exam, full strength, normal range of motion and intact sensation at exams. [Plaintiff] has imaging of her lumbar spine indicating minimal degenerative changes (8F/86), and although she testified to pain in her shoulders, arms and hands, the evidence does not suggest significant limitations in function. [Plaintiff]'s angina was considered stable. She has SVT episodes but has not required more than conservative treatment (11F/80).

There is no evidence that such a condition has impacted severely on her daily functioning. She also had an abscess on her kidney that had to be drained (11F), but there is no evidence of kidney damage. There is mention of recurrent procedures to drain the abscess on two occasions, but there is no evidence that these episodes are occurring so frequently that she is incapable of competitive employment. The imaging and clinical findings do not support [Plaintiff]'s allegations of a totally disabling condition.

(Tr. 25).

### C.    The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2023, and has not engaged in substantial gainful employment since December 3, 2018.  (Tr. 17). The ALJ determined that Plaintiff has the following severe impairments: obesity, diabetes mellitus type II, osteoarthritis/degenerative changes in knees and shoulders, lumbar degenerative disc disease, supraventricular tachycardia.  (*Id.*).  Yet, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 18).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional crawling, crouching, and kneeling; avoid all exposure to hazards, including unprotected heights and unprotected hazardous machinery; avoid concentrated exposure to temperature extremes; frequent (but not constant) handling and fingering bilaterally; only occasional overhead reaching bilaterally.

(Tr. 19).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with her conservative treatment history, objective findings on exam, testing and imaging, and her actual reports at visits and reports of treating providers in treatment notes."  (Tr. 20).

Relying on the vocational expert's ("VE") testimony, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a newspaper carrier, a fund raiser II, a recreation aide and a motor assembler. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 26). She therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, at any time since December 3, 2018. (Tr. 29).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that: (1) the ALJ failed to properly evaluate the opinion from treating source, Dr. Simon; (2) the ALJ erred in her symptom severity evaluation, and (3) the ALJ failed to carry the Step Five burden. (Docs. 15 and 17).

### A. Medical Opinion

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* Plaintiff filed her application after May 23, 2017, so it is governed by the new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. §§ 404.1513(a)(1)– (5); 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is not generally required to do so. *Id*. Thus, the role of the ALJ is to articulate how they considered medical opinions and how persuasive they found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to ensure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because she failed to properly evaluate the opinion of Dr. Simon. (Doc. 15 at 5). Specifically, Plaintiff says the ALJ did not properly discuss the supportability or consistency factors when discounting Dr. Simon's conclusion that she is disabled. (*Id.* at 4–6) (citing Tr. 1183– 86)).

The ALJ considered the opinion of Dr. Simon and ultimately found her opinion unpersuasive. (Tr. 22, 24). Dr. Simon provided both a psychological conditions report (Tr. 722–

26) and a physical conditions report (Tr. 1183–86).  The Court concludes that the ALJ's assessment of these opinions was not erroneous.

1.    *Psychological Conditions Report*

Plaintiff saw Dr. Simon on August 9, 2019.  (Tr. 22, 1581–90).  The ALJ summarized the medical visit notes as follows:

> [Plaintiff's] physical therapy was helping with her hip stiffness. She reported that she had been diagnosed with hip bursitis. Pain was a 6/10 that day. She reported improvement and denied chest pain, palpitations, shortness of breath, joint pain, joint swelling and limited range of motion, focal weakness, bruising or bleeding tendencies. She was ambulatory and not in any acute distress and comfortable. Objective findings were normal including detailed findings as to her heart, neck, and musculoskeletal systems. The doctor changed his previous possible diagnosis of hip degenerative joint disease to hip bursitis (bilateral), noting no objective abnormalities. He also included hypertension and type II diabetes mellitus without complication.

(Tr. 22 (citing Tr. 1581–90)).

After this visit, Dr. Simon completed a psychological conditions disability form.  (Tr. 22, 722–26).  The ALJ correctly summarized that Dr. Simon indicated no mental impairment or limitations due to mental issues.  Yet, Dr. Simon indicated "attention and persistence limited to less than 1 hour without explanation, and over four likely days missed per month due to 'musculoskeletal impairment.'"  (*Id*.).  The ALJ found this opinion evidence to be unpersuasive because it was unsupported by Dr. Simon's own notes and was inconsistent with Plaintiff's treatment history, objective exam findings, testing, and imaging throughout the record.

For support, the ALJ went to the record.  (Tr. 22).  Notably, Dr. Simon indicated normal mental status and no issues with attention or concentration.  (Tr. 22, 1581–90).  Thus, the ALJ concluded, Dr. Simon's opinion that Plaintiff's attention and persistence is limited to less than 1 hour contradicts the treatment notes.  Dr. Simon also indicated that Plaintiff is likely to miss over four days per month due to musculoskeletal impairment.  (Tr. 22, 726).  Again, the ALJ found this

to be uncorroborated. First, the ALJ noted that this was supposed to be a mental evaluation and this limitation is due to a physical condition. (Tr. 22). Even so, the ALJ still considered the limitation and found it to be unsupported because the treatment notes indicate mild and normal physical findings that included an "intact range of motion, normal strength, normal tone, no edema, and intact gait." (*Id.*). And, said the ALJ, Dr. Simon's treatment of Plaintiff was "conservative." (*Id.*)

Upon independent review, the Court finds that the ALJ's summary of the relevant record to be accurate. Plaintiff indicated she did not have trouble walking (Tr. 1583), her physical therapy was helping with her hip stiffness and pain (Tr. 1581, 1583), she complains of joint pain but denies joint swelling or a limited range of motion (Tr. 1585), Dr. Simon indicated she ambulated normally and was not in any acute distress (*id.*), she appeared comfortable (*id.*), musculoskeletal findings were all normal (Tr. 1587), and her treatment plan included continued physical therapy for her hip pain, weight loss, and medication for various conditions (Tr. 1589). The ALJ considered supportability as required and concluded that the opinion was unsupported by the medical source. Substantial evidence supports the ALJ's conclusion.

Additionally, the ALJ concluded that this opinion was inconsistent with Plaintiff's treatment history, objective exam findings, and testing and imaging throughout the record. To begin, Plaintiff has denied any mental health treatment. (Tr. 20). And Plaintiff's statement of error does not focus on mental health. (Doc. 15). Additionally, upon independent review, the Court did not find mental health records. Thus, the ALJ's conclusion that Dr. Simon's opinion that Plaintiff's attention and persistence is limited to less than 1 hour is inconsistent with the record is supported by substantial evidence.

The ALJ also found that Dr. Simon's opinion that Plaintiff is likely to miss over four days

per month due to musculoskeletal impairment was inconsistent with the record. (Tr. 22, 726). When evaluating consistency, the ALJ compared the opinion to evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(2). The ALJ's explanation must be read in context with the decision as a whole, *Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-CV-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, No. 2:18-CV-1250, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019), and afford the reviewing court an opportunity to review to ensure the decision is supported by substantial evidence, *Fiktus v. Kihakazi*, No. 1:20CV1689, 2021 WL 5567866, at *9 (N.D. Ohio July 29, 2021), *report and recommendation adopted sub nom. Fiktus v. Comm'r of Soc. Sec.*, No. 1:20-CV-01689, 2021 WL 5566805 (N.D. Ohio Nov. 29, 2021). This is a low bar. *Id.*

The ALJ's opinion satisfies the standard. The ALJ noted that Plaintiff had normal musculoskeletal findings, this includes a normal gait, normal extremities, normal muscle strength and tone, normal range of motion. (Tr. 21, 1613, 23, 1553, 1537–38). Plaintiff was ambulatory (Tr. 23, 1552, 1536) and denied trouble walking, weakness, or numbness (Tr. 21, 1608–27, 22, 1570–75, 23, 1506–13). Additionally, the ALJ considered Plaintiff's foot, knee, and hip pain throughout the opinion (Tr. 19–26). For example, the ALJ stated:

> The claimant complained of left foot pain for three weeks with imaging on 12/30/19 revealing only mild diffuse degenerative changes. Recent complaints such as these involving her left foot fail to meet the durational requirements (Tr. 1377). She was referred to a podiatrist for a calcaneal spur of the left foot on 3/16/20 revealed on imaging (Tr. 1180). She was again referred to physical therapy for bilateral hip pain thought to be bilateral hip bursitis (Tr. 1432). She was referred to orthopedics for her knee pain complaints on 5/20/19, 6/11/19, and thereafter, but had yet to follow through as of the hearing, which suggests more tolerable symptomology than alleged (Tr. 1716, 1762).

(Tr. 21).

> She does have a calcaneal spur on her left foot, and bursitis in her hips (Tr. 1581), but there is no medical support indicating significant problems with standing and

walking, with an intact gait on exam, full strength, normal range of motion and intact sensation at exams. The claimant has imaging of her lumbar spine indicating minimal degenerative changes (Tr. 813), and although she testified to pain in her shoulders, arms and hands, the evidence does not suggest significant limitations in function.

(Tr. 25).    Thus, the ALJ's conclusion that Dr. Simon's opinion regarding Plaintiff's musculoskeletal impairment was inconsistent with the record is supported by substantial evidence.

Plaintiff argues that the ALJ should have considered her joint pain, stiffness, trouble walking, her difficulty ambulating, her inability to stand more than five minutes, degenerative changes in her knees shown by x-ray.  (Doc. 15 (citing Tr. 1183, 483, 1497)).  Notably, much of what Plaintiff cites are notes in the record of Plaintiff's subjective complaints.  Further, as explained above, the ALJ adequately considered the record regarding such complaints.  And, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

2.    *Physical Conditions Report*

Plaintiff saw Dr. Simon on February 17, 2020.  (Tr. 24, Tr. 1495–1504).  Dr. Simon also completed a physical conditions disability form on the same day.  (Tr. 24, 1183–86).  Dr. Simon's opinion was that Plaintiff would be off task 25% of the workday, she would be able to pay attention less than five minutes due to severe pain in hips and knees, she only can lift or carry less than ten pounds, her legs must be elevated due to edema, she needs a cane, limited reaching, handling, fingering, feeling, and push pull rarely due to osteoarthritis, and rare use of foot controls due to foot pain.  (*Id.*).  The ALJ found this opinion evidence to be unpersuasive because it was unsupported by Dr. Simon's own notes and was inconsistent with Plaintiff's reports of doing well overall, compliance issues, and her very conservative treatment history.  (Tr. 24).

14

The ALJ concluded that Dr. Simon's opinion is unsupported by her treatment notes which contain mild to normal findings.  (Tr. 24).  For example, the ALJ explains that Dr. Simon's limitations due to Plaintiff's pain are unsupported by Plaintiff's 0/10 pain report, (Tr. 24, 1496), and normal musculoskeletal findings (Tr. 24, 1501).  Dr. Simon's limitations for edema are unsupported by Dr. Simon's notes which indicate no edema (Tr. 24, 1500).  Similarly, Dr. Simon's limitations regarding a cane or assistive device are unsupported by her notes which reflect a normal gait and not even occasional use of a cane.  (Tr. 24, 1501).  Dr. Simon's limitations due to foot pain, are unsupported because Plaintiff "complained primarily of left heel pain with mild imaging findings, essentially normal objective exam findings, and primarily a left calcaneal spur that she has to treat with a podiatrist.  Dr. Simon noted an intact gait and normal lower extremity findings throughout his records, with only some crepitus at the most recent exam."  (Tr. 24).  The ALJ considered supportability as required and concluded that the opinion was unsupported by the medical source.

The ALJ also concluded that Dr. Simon's opinion is inconsistent with the overall record.  The ALJ notes that Dr. Simon's limitations due to pain are inconsistent with minimal findings on imaging.  (*Id.*).  The ALJ concluded that imaging of Plaintiff's left hip was normal, there were minimal degenerative changes in the lumbar spine and knees, and there were mild diffuse degenerative changes in her left foot and a bone spur,  (Tr. 21 (citing Tr. 547, 1195, 1377)).  As discussed above, the ALJ throughout the opinion notes Plaintiff's normal musculoskeletal findings (Tr. 21, 1613, 23, 1553, 1537–38), that Plaintiff was ambulatory (Tr. 23, 1552, 1536), and that she denied trouble walking, weakness, or numbness (Tr. 21, 1608–27, 22, 1570–75, 23, 1506–13).  Further, the ALJ considered Plaintiff's pain and concluded that Plaintiff's medication dulls the pain (Tr. 19) and that she often reports 0/10 pain (Tr. 20, 22, 23, 470, 1629, 1596), but noted her

occasional elevated pain (Tr. 21, 22). Thus, the ALJ's evaluation of Dr. Simon's opinion has record support.

Plaintiff argues that the ALJ should have considered degenerative changes in her spine and shoulders (Doc. 15 (citing Tr. 582)), anemia (*Id.* (citing Tr. 423)), and palpitations and tachycardia (*Id.* (citing 373)), unstable angina, and chronic iron deficiency (*Id.* (citing Tr. 337, 341, 423, 431, 432)). But these symptoms, with the exception of spine and shoulder degeneration, are not related to Dr. Simon's opinion which focuses on physical limitations due to knees, hips, shoulders, and feet pain (Tr. 1183). Regarding the degenerative changes in Plaintiff's spine and shoulder, the ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Houston v. Saul*, No. 1:20-CV-1371, 2021 WL 2635376, at *14 (N.D. Ohio June 25, 2021). And again, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her*, 203 F.3d at 389–90. Further, the record cited by Plaintiff is a single radiology report related to an ER visit by Plaintiff for chest pain. (Tr. 582). At base, Plaintiff fails to explain how the ALJ's failure to consider this evidence when assessing the persuasiveness of Dr. Simon's opinion was harmful to her.

*** 

In sum, the ALJ's explanation for why Dr. Simon's opinions were unpersuasive afforded the Court the opportunity to conduct a meaningful review. The ALJ considered the required factors of supportability and consistency and found Dr. Simon's opinion to be unpersuasive. Substantial evidence supports the decision, and there was no error. *See* 20 C.F.R. § 416.920c(b)(2); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-2886, 2021 WL 1996562, at *6 (S.D. Ohio May 19, 2021).

### B.    Subjective Complaints

Next, Plaintiff alleges that the ALJ reversibly erred when evaluating her symptom severity. (Doc. 15 at 4). Specifically, Plaintiff says that the ALJ impermissibly relied on her lifestyle and daily activities. (*Id.* at 6). This alleged error is without merit for two reasons. First, Plaintiff has waived this argument by failing to articulate any basis for relief. Second, even if the Court overlooks this failure, the ALJ's justification for discounting Plaintiff's subjective allegations is supported by substantial evidence.

       1.    *Waiver*

Plaintiff's alleged error is only two sentences: "The ALJ also appears to reject her in part because of her lifestyle. While the ALJ was correct to take daily activities into account, the failure to recognize the differences between activities of daily living and work activities is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (Doc. 15 at 6). Plaintiff cites several cases to support her argument that the ability to do daily activities does not equate to an ability to do work activities. (*Id.*).

Plaintiff fails to develop this argument, provide citation to the record to support this argument, suggest what the ALJ should have done differently, identify how she was prejudiced, or why she is entitled to relief. Undeveloped arguments, such as this, are deemed waived. *Ferguson v. Comm'r of Soc. Sec.*, No. 2:16-CV-13289, 2018 WL 912882, at *4 (E.D. Mich. Jan. 22, 2018), *report and recommendation adopted sub nom. Ferguson v. Berryhill*, No. 16-13289, 2018 WL 902281 (E.D. Mich. Feb. 15, 2018); *see also Grady v. Comm'r of Soc. Sec.*, No. 12-CV-13349, 2013 WL 4670365, at *12 (E.D. Mich. Aug. 30, 2013) (citing *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir.2003)) ("When Plaintiff's arguments are raised in only a perfunctory manner, they are forfeited."). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Id.* (quoting

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).  That is what Plaintiff does here.
The Court can perhaps infer the basis for Plaintiff's claim, but that does not relieve Plaintiff of her
burden to articulate her claim with support.  It is not the onus of the Court to formulate arguments
on Plaintiff's behalf, especially because Plaintiff is represented by counsel.  *See, e.g., McFarland
v. Berryhill*, No. CIV-16-449-F, 2017 WL 922490, at *3 (W.D. Okla. Feb. 6, 2017), *report and
recommendation adopted*, No. CIV-16-0449-F, 2017 WL 913799 (W.D. Okla. Mar. 7, 2017) ("It
is not the court's duty to dissect Plaintiff's statements looking for substantive allegations and the
undersigned does not address these underdeveloped arguments.").  Thus, the Court concludes this
argument is waived.

2.     *The ALJ's Assessment is Supported by Substantial Evidence*

Even if the Court overlooks Plaintiff's failure to develop an argument, the result is the same
because the ALJ's assessment is supported by substantial evidence.

The Social Security Administration uses a two-step process for evaluating an individual's
symptoms.  First, the ALJ determines whether an individual has a medically determinable
impairment that could reasonably be expected to produce the individual's alleged symptoms.  Soc.
Sec. R. 16-3p, 2016 WL 1119029, *3 (March 16, 2016).  Second, the ALJ evaluates the intensity
and persistence of the individual's symptoms and determines the extent to which the individual's
symptoms limit her ability to perform work-related activities.  *Id.* at *4.  To do this, the ALJ must
examine the entire record, including the objective medical evidence; the individual's relevant
statements; statements and other information provided by medical sources and others; and any
other relevant evidence in the record.  *Id.*  The ALJ should also consider:

1.     Daily activities;
2.     The location, duration, frequency, and intensity of pain or
       other symptoms;
3.     Factors that precipitate and aggravate the symptoms;

18

> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7; *see also* 20 C.F.R. § 404.1529(c)(3). "But not every factor will be discussed in every case. If there is no evidence regarding one of the factors, that factor will not be discussed." *Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020) (citing Soc. Sec. R. 16-3p, 2017 WL 5180304, *8), *report and recommendation adopted sub nom. Davis v. Comm'r of Soc. Sec.*, No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020).

First, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 20). Next, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are inconsistent with the record, specifically "her conservative treatment history, objective findings on exam, testing and imaging, and her actual reports at visits and reports of treating providers in treatment notes." (*Id.*). The ALJ supports this conclusion with an in-depth analysis of Plaintiff's medical record. (Tr. 20–26). Plaintiff's subjective complaints may support a finding of disability, but only where objective medical evidence confirms the severity of the alleged symptoms. *Manning v. Comm'r of Soc. Sec.*, No. 1:18-CV-1246, 2020 WL 1678262, at *4 (W.D. Mich. Feb. 21, 2020), *report and recommendation adopted*, No. 1:18-CV-1246, 2020

WL 1675843 (W.D. Mich. Apr. 6, 2020) (citing *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004)).

Plaintiff's argument confuses the ALJ's analysis. Plaintiff seems to say the ALJ equated her ability to do daily activities with an ability to do substantial gainful activity. It is true that generally "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" are not considered to be substantial gainful activity. 20 C.F.R. § 404.1572. But here the ALJ was evaluating the consistency of Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms with the record. In this analysis, an ALJ may consider whether Plaintiff's daily activities are inconsistent with her allegations of pain and other symptoms. Soc. Sec. R. 16-3p, 2016 WL 1119029, *7 (March 16, 2016). Thus, the ALJ permissibly considered Plaintiff's daily activities (Tr. 20, 23, 25) to determine consistency with the record. The ALJ considered Plaintiff's daily activities, such as the inability to do laundry, but the ability to transfer clothes from the washer to the dryer; the ability to prepare simple meals; the ability to use a broom; the ability to push a cart at the grocery store, but only reach waist level items; and the ability to color and do word finds. (Tr. 20). But the ALJ relied more heavily on the inconsistency between Plaintiff's subjective complaints and her conservative treatment history and notes by providers. (*Id.*).

The ALJ articulated a basis for her decision to discount Plaintiff's subjective statements. In making this decision, the ALJ permissibly considered Plaintiff's daily activities, along with the entire record, thus the ALJ did not commit a reversible error. Plaintiff's assertion that it was improper for the ALJ to consider daily activities is meritless.

C. **Step 5 Burden**

Finally, Plaintiff contends that "The ALJ's hypothetical questions are not based upon substantial evidence and allow for jobs beyond the plaintiff's functional abilities. By ignoring the medical opinions, the ALJ has overestimated the occupational base." (Doc. 15 at 7). Plaintiff's alleged error is without merit.

At step five, the ALJ must make a finding, supported by substantial evidence, that Plaintiff has "the vocational qualifications to perform specific jobs." *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *3 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted*, No. 2:21-CV-726, 2022 WL 219864 (S.D. Ohio Jan. 25, 2022) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). A VE's testimony can provide this substantial evidence if the hypothetical question accurately portrays Plaintiff's impairments. *Id.* (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010)). If the ALJ's hypothetical question to the VE matches the RFC, then Plaintiff's attack is actually a veiled RFC attack. *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) (finding that Plaintiff's allegation that the ALJ erred in formulating his hypothetical question to the VE is a veiled attack on the RFC because ALJ's hypothetical question matches the RFC); *see also Parker v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-11162, 2021 WL 4891021, at *3 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted sub nom. Parker v. Saul*, No. 20-11162, 2021 WL 4864274 (E.D. Mich. Oct. 19, 2021) ("Notwithstanding the reference to Step 5, it is clear that Plaintiff's actual point of attack is the RFC, there being no showing of an incongruity between the hypothetical to the VE and the RFC."); *Robinson v. Comm'r of Soc. Sec.*, No. 13-CV-13124, 2014 WL 4145339, at *9 (E.D. Mich. Aug. 20, 2014).

Here, Plaintiff does not allege that the hypothetical question does not match the RFC. The Court independently reviewed the record and determined that the hypothetical to the VE (Tr. 67) matches the RFC (Tr. 19). Thus, Plaintiff's step five allegation is a veiled attack on the RFC. And Plaintiff's allegations here rely entirely on her previous RFC error; Plaintiff says the hypothetical is not based on substantial evidence because it ignores medical opinions and thus allows for jobs beyond her abilities. (Doc. 15 at 7). Since the Court already determined that the ALJ's medical opinion evaluation was supported by substantial evidence, and Plaintiff makes no additional RFC arguments, this error is meritless.

Nevertheless, the ALJ decided this case at step four so any step five error is harmless. *See, e.g., Patrick v. Astrue*, No. CV-07-3099-CI, 2009 WL 36771, at *4 (E.D. Wash. Jan. 6, 2009) ("If the ALJ did indeed make an adequate step four finding that Plaintiff can perform past relevant work, the error at step five is harmless error because it was not a required step."); *Farley v. Colvin*, No. 2:11-0123, 2013 WL 5727389, at *14 (M.D. Tenn. Oct. 21, 2013), *report and recommendation adopted*, No. 2:11-CV-00123, 2013 WL 6009489 (M.D. Tenn. Nov. 13, 2013) (finding that the step five error was harmless because the step five analysis was in the alternative to an adequate step four analysis). At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform the requirements of her past relevant work. (Tr. 26); *see also* 20 C.F.R. § 404.1520. The ALJ determined Plaintiff is not disabled at step four. (Tr. 26). But in addition to the step four conclusion, the ALJ made "alternative findings for step five of the sequential evaluation process." (*Id.*). Plaintiff has not shown how the step five error was harmful, given that the step five analysis was in the alternative and that the ALJ made her conclusion at step four. Plaintiff has failed to carry her burden. *Thomas v. Comm'r of Soc. Sec.*, No. 2:18-CV-108, 2019 WL 642679, at *13 (S.D. Ohio Feb. 15, 2019), *report and recommendation adopted*, No. 2:18-

CV-108, 2019 WL 2414675 (S.D. Ohio June 7, 2019) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)) ("The burden of showing harmfulness is normally on the party attacking an agency's determination."); *Jackson on behalf of R.B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00339, 2021 WL 3508072, at *2 (S.D. Ohio Aug. 10, 2021) ("In federal court, the claimant carries the burden of showing that an ALJ prejudicially erred.").  Thus, any error at step five is harmless because this analysis was in the alternative to the step four conclusion.

## IV.    CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date:   February 16, 2022                          /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE